UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Cathy L. Waldor |
| | : | |
| v. | : | Mag. No. 19-7036 |
| | : | |
| DANIEL GONZALEZ CASTILLO, | : | |
| MARIA ELENA GARCIA, | : | **CRIMINAL COMPLAINT** |
|   a/k/a "Mary Elena Garcia," and | : | |
| LUIS ALBERTO GARCIA MARTINEZ | : | |

I, Peter J. Morano, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Task Force Officer with the U.S. Drug Enforcement Administration and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

Continued on the attached page and made a part hereof.

_____
Task Force Officer Peter J. Morano
U.S. Drug Enforcement Administration

Sworn to before me and subscribed in my presence,
January 11, 2019 in Newark, New Jersey

HONORABLE CATHY L. WALDOR          _____
UNITED STATES MAGISTRATE JUDGE     Signature of Judicial Officer

1

## **ATTACHMENT A**

On or about January 10, 2019, in Hudson County, in the District of New Jersey and elsewhere, defendants

DANIEL GONZALEZ CASTILLO,

MARIA ELENA GARCIA,
a/k/a "Mary Elena Garcia," and

LUIS ALBERTO GARCIA MARTINEZ

did knowingly and intentionally conspire and agree with each other and others to distribute and possess with intent to distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

In violation of Title 21, United States Code, Section 846.

## ATTACHMENT B

I, Peter J. Morano, am a Task Force Officer with the U.S. Drug Enforcement Administration ("DEA"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and items of evidence. Where statements of others are related herein, they are related in substance and part. Because this Complaint is being submitted for the sole purpose of establishing probable cause to support the issuance of a complaint, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. On or about January 10, 2019, at approximately 3:00 p.m., law enforcement observed Defendant DANIEL GONZALEZ CASTILLO ("CASTILLO") sitting in a vehicle, which was bearing a Mexican license plate ("Vehicle 1") while parked in the parking lot of a hotel located in North Bergen, New Jersey ("Hotel 1"). CASTILLO appeared to be looking around and waiting for someone to arrive. CASTILLO began driving Vehicle 1 towards a freeway, during which time he repeatedly looked in the rearview mirror of Vehicle 1 and turned his head around in a manner that appeared that he was looking to see if anyone was following him.

2. CASTILLO was observed by law enforcement pulling into the parking lot of a different hotel ("Hotel 2") also located in North Bergen, New Jersey that was approximately a quarter mile from Hotel 1. Law enforcement observed Vehicle 1 park next to another vehicle bearing a South Carolina license plate ("Vehicle 2"). Law enforcement observed a female, later determined to be MARIA ELENA GARCIA ("GARCIA"), exit the driver's side of Vehicle 2 and enter the front passenger door of Vehicle 1.

3. Law enforcement observed the trunk of Vehicle 1 open. CASTILLO then exited the driver's side door of Vehicle 1 and was observed near the open trunk of Vehicle 1 and appeared to be handling something in the Vehicle 1 trunk. Law enforcement then also observed that the trunk of Vehicle 2 was open.

4. Law enforcement observed CASTILLO take a package (the "Package") from the trunk of Vehicle 1 and place it in the trunk of Vehicle 2. CASTILLO then observed the law enforcement officer, at which point he appeared nervous, shut the trunks of Vehicle 1 and Vehicle 2, and then entered into the driver's side door of Vehicle 1. A law enforcement officer approached Vehicle 1, identified himself as law enforcement, and asked CASTILLO to step out of the vehicle.

5. CASTILLO stepped out of Vehicle 1. CASTILLO appeared to be nervous and stated, in sum and substance, "I can't believe they did me like this." After being advised of and waiving his *Miranda* rights, CASTILLO was asked what

was in the trunk, to which he responded "it's not mine." CASTILLO told law enforcement that he had driven from Mexico to New Jersey, that Vehicle 1 was a rental vehicle, and consented to law enforcement searching Vehicle 1.

6. In the trunk of Vehicle 1, law enforcement observed what appeared to be a car battery that had the top portion of the battery removed, displaying what appeared to be several empty compartments within the battery (the "Battery Trap").

7. After being advised of and waiving his *Miranda* rights, GARCIA told law enforcement that she was meeting a friend and consented to a search of Vehicle 2. In the trunk of Vehicle 2, law enforcement observed the Package. Inside the Package were smaller wrapped packages that appeared to be narcotics and small enough to fit into the compartments within the Battery Trap.

8. CASTILLO received a phone call while speaking with law enforcement that appeared to be from a Mexican phone number. CASTILLO placed the call on speakerphone. Law enforcement heard a male's voice say, in sum and substance, "he is on his way from New York, have the money ready."

9. CASTILLO received another call from an individual later determined to be LUIS ALBERTO GARCIA MARTINEZ. MARTINEZ was heard saying, in sum and substance, "I'm on my way, meet me in the lobby with money for the taxi, I don't have enough." After that phone call, CASTILLO told law enforcement that the "stuff," (which law enforcement understood to mean the small wrapped packages that appeared to be narcotics) belonged to MARTINEZ.

10. Law enforcement and CASTILLO went to the lobby of Hotel 2. MARTINEZ walked into the lobby of Hotel 2 and waved his right hand in what appeared to be an attempt to get CASTILLO's attention. At that time, law enforcement approached MARTINEZ.

11. After being advised of and waiving his *Miranda* rights, MARTINEZ stated to law enforcement that he had just met a drug purchaser in New York and had returned to Hotel 2 to collect drugs from CASTILLO and GARCIA to take back to the drug purchaser.

12. Also, according to MARTINEZ, prior to 3:00 p.m. on January 10, 2018, CASTILLO physically extracted the Battery Trap from Vehicle 2, and CASTILLO removed drugs from the Battery Trap.

13. MARTINEZ also stated that GARCIA was supposed to drive back to other individuals the proceeds from the sale of the drugs contained in the Package.

14. The substance contained in the small wrapped packages (the

"Substance") was weighed and field-tested. The Substance weighed approximately 4.07 kilograms and tested positive for the presence of heroin.